UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| CROWN HEIGHTS SHOMRIM VOLUNTEER : SAFETY PATROL, INC., ARON HERSHKOP, CHAIM HERSHKOP, YEHUDA HERSHKOP, : BENJAMIN LIFSHITZ, SCHNEUR PINSON and NECHEMIZ SLATTER, : <br><br> Plaintiffs, : <br><br>- against - : <br><br>THE CITY OF NEW YORK, CROWN : HEIGHTS SHMIRA, INC., LEIB SKOBLO, PAUL HUEBNER a/k/a LEVI HUEBNER, PETER SIMMINETTI, BOBBY TROISE, : JOHN HAMMAD, LENNY WHITE, BRIAN DUFFY, WAYNE MANGAN, TIMOTHY : KELCH, SEAMUS McHUGH, YITZCHOK SHUCHAT, EFRAIM OKONOV, YOSSI : STERN, ELI POLTORAK, and JOHN DOES A-M, JANE DOES 1-5, the name DOE being : fictitious and intended to represent those police officers and employees of the CITY OF NEW YORK involved in the deprivation of the : Plaintiffs rights of due process, assembly and freedom of speech, : <br> : <br> Defendants. : | Docket No. 11 CV 0329 (KAM)(JMA) <br><br> **SECOND AMENDED** <br> **COMPLAINT** <br><br> **JURY DEMANDED** |

---

Plaintiffs, by their attorney, Tedd Blecher, Esq., for their Second Amended Complaint

against the defendants THE CITY OF NEW YORK, CROWN HEIGHTS SHMIRA, INC., LEIB

SKOBLO, PAUL HUEBNER a/k/a LEVI HUEBNER, PETER SIMONETTI s/h/a PETER

SIMMINETTI, ROBERT TROISE s/h/a BOBBY TROISE, JOHN HAMMOND s/h/a JOHN

HAMMAD, LEONARD WRIGHT s/h/a LENNY WHITE, BRIAN DUFFY, WAYNE

MANGAN, TIMOTHY KELCH, SEAMUS McHUGH, YITZCHOK SHUCHAT, EFRAIM OKONOV, YOSSI STERN, ELI POLTORAK, and JOHN DOES A-M, JANE DOES 1-5, the name DOE being fictitious and intended to represent those police officers involved in the deprivation of the Plaintiff's rights of due process, assembly and freedom of speech, alleges at all times material herein, that:

## VENUE AND JURISDICTION

1. This Action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the First, Fifth and Fourteenth Amendments to the United States Constitution.

2. Jurisdiction is founded on the existence of a federal question under 28 U.S.C. §1331, and a question arising under an Act of Congress, U.S.C., Title 42, §1983, and hereinunder more fully appears.

3. The amount in controversy exceeds $75,000.00 excluding interest and costs.

4. Venue is properly laid in this District under 28 U.S.C. Section 1391(b), this being the District in which the claim arose.

## PARTIES

5. Plaintiff CROWN HEIGHTS SHOMRIM VOLUNTEER SAFETY PATROL, INC., (hereinafter "SHOMRIM") is a not for profit corporation organized and existing under the laws of the State of New York with its offices in the County of Kings, State of New York.

6. Plaintiff ARON HERSHKOP is a resident of the State of New York, County of Kings, and the President and co-ordinator of SHOMRIM.

7. Plaintiff CHAIM HERSHKOP is a resident of the State of New York, County of Kings, and a member of SHOMRIM.

8. Plaintiff YEHUDA HERSHKOP is a resident of the State of New York, County of Kings, and a member of SHOMRIM.

9. Plaintiff BENJAMIN LIFSHITZ is a resident of the State of New York, County of Kings, and a member of SHOMRIM.

10. Plaintiff SCHNEUR PINSON is a resident of the State of New York, County of Kings, and a member of SHOMRIM.

11. Plaintiff NECHEMIZ SLATTER is a resident of the State of New York, County of Kings, and a member of SHOMRIM.

12. Defendant CITY OF NEW YORK (the "CITY") is, and was at all times material herein, a municipal corporation formed pursuant to the laws of the State of New York and was the employer of the CITY's employees involved in the deprivation of the Plaintiffs' rights of assembly and freedom of speech.

13. Defendant CROWN HEIGHTS SHMIRA, INC. ("SHMIRA") is a not for profit corporation organized and existing under the laws of the State of New York with its offices in the County of Kings, State of New York.

14. Defendant LEIB SKOBLO ("SKOBLO") is a resident of the State of New York, County of Kings, and a member of SHMIRA.

15. Defendant PAUL HUEBNER a/k/a LEVI HUEBNER ("HUEBNER") is a resident of the State of New York, County of Kings, and a member of SHMIRA.

16. Defendant YITZCHOK SHUCHAT ("SHUCHAT") resides in the State of New York, County of Kings, and the State of Israel and he is a member of SHMIRA.

17. Defendant YOSSI STERN ("STERN") is a resident of the State of New York, County of Kings, and a member of SHMIRA.

18. Defendant ELI POLTORAK ( POLTORAK ) is a resident of the State of New York, County of Kings, and a member of SHMIRA.

19. Defendant EFRAIM OKONOV ( OKONOV ) is a resident of the State of New York, County of Kings, and a member of SHMIRA.

20. Defendants PETER SIMONETTI ( SIMONETTI ), ROBERT TROISE ( TROISE ), JOHN HAMMOND ( HAMMOND ), LEONARD WRIGHT ( WRIGHT ), BRIAN DUFFY ( DUFFY ), WAYNE MANGAN ( MANGAN ), TIMOTHY KELCH ( KELCH ), and SEAMUS McHUGH ( McHUGH ) are or were in the employ of the Police Department of the defendant CITY (hereafter  NYPD ) during the relevant periods and times hereinafter mentioned.

21. That upon information and belief, for all relevant periods and times hereafter mentioned, SIMONETTI was the commanding officer of the 71 Precinct in Crown Heights and is presently an inspector.

22. That upon information and belief, for all relevant periods and times hereafter mentioned, TROISE was a sergeant in the 71 Precinct in Crown Heights and oversaw the  Civilian Observation Patrol  ( COP ) program and retired in or about March 2011;

23. That upon information and belief, for all relevant periods and times hereafter mentioned, HAMMOND was an officer in the 71 Precinct in Crown Heights and was the community affairs officer.

24. That upon information and belief, for all relevant periods and times hereafter mentioned, WRIGHT was an officer in the 71 Precinct in Crown Heights.

25. That upon information and belief, for all relevant periods and times hereafter mentioned, DUFFY was a detective in the 77 Precinct in Crown Heights.

heramen3 6/8/12                               -4-

26. That upon information and belief, for all relevant periods and times hereafter mentioned, MANGAN was a sergeant in the 77 Precinct in Crown Heights.

27. That upon information and belief, for all relevant periods and times hereafter mentioned, KELCH was a sergeant in the 77 Precinct in Crown Heights.

28. That upon information and belief, for all relevant periods and times hereafter mentioned, McHUGH was a lieutenant in the 77 Precinct in Crown Heights.

29. The defendants JOHN DOES A-M and JANE DOES 1-5, the name DOE being fictitious, and intended to represent those police officers and employees of the CITY OF NEW YORK involved in the deprivation of the Plaintiffs rights of due process, assembly and freedom of speech.

### FIRST CLAIM FOR RELIEF

Facts

30. SHOMRIM, which is Hebrew for Guards, is a volunteer anti-crime, safety patrol serving the Crown Heights community of Brooklyn, New York, devoted to helping neighbors by fixing tires, directing traffic, escorting elderly residents to and from bus stops as well as holding suspects for the police. There are SHOMRIM groups found in Hasidic communities in Stamford Hill in London, Melbourne and the Williamsburg, Flatbush and Boro Park neighborhoods of Brooklyn.

31. Though the plaintiff was only incorporated in 1997, SHOMRIM in Crown Heights goes back to on or about 1968. In on about November 22, 1999, after two members of SHOMRIM were expelled for engaging in criminal activities and when SHOMRIM refused to take back the expelled members, the expelled members formed the defendant SHMIRA, which means Protect.

32. That thereafter SHOMRIM and SHMIRA competed serving the Crown Heights neighborhood.

33. At some time in or after December 1, 2007, upon information and belief, desirous of working around the traditional rabbinic structure of the orthodox Jewish community in Crown Heights to avoid the stigma attached to mosser [1], the NYPD through SIMONETTI informed members of SHOMRIM that hereafter only one volunteer citizen patrol in Crown Heights would be recognized.

34. That upon information and belief, prior to SIMONETTI s announcement, it is believed leaders of SHMIRA including YOSSI STERN ( STERN ), the Administrative Director of SHMIRA, and PAUL HUEBNER ( HUEBNER ), SHMIRA s legal advisor, and other members of SHMIRA, met with the District Attorney of Kings County and/or members of his staff and police officials of NYPD and an understanding was reached that SHMIRA would assist the NYPD and the District Attorney s office in overcoming the reluctance among the Crown Heights Jewish community to report crimes to the police and civil authority [2] and SHMIRA would be recognized by the NYPD and the District Attorney as the sole volunteer citizen patrol in Crown Heights.

35. Following the aforesaid understanding, SHMIRA announced that it was endorsed by the NYPD and that the NYPD will supply SHMIRA with training and ongoing support and that SHMIRA had joined forces with the NYPD and will now work directly with the 71st precinct

---

[1] - Among Orthodox Jews and particularly the haredim (the most conservative), the Talmudic Law of the Moser (or Mosser), or Law of the Jewish Informer is zealously observed. It is essentially a covenant prohibiting a Jew from informing on another Jew to a non-Jew directly or indirectly.

[2] - The District Attorney observed in or about October 19, 2009, that in the past year there had been a sudden spiking of arrests for sexual abuse among the Hasidic.

and the new COP (Civilian Observation Patrol) program and that SHMIRA will be known as CHSP/COP Crown Heights Safety Patrol.

36. That members of SHMIRA performed and continues to perform functions traditionally and customarily performed by the police which functions included patrolling streets within the Crown Heights community and apprehending criminals. That SHMIRA s members wore patches closely simulating the patches worn by members of the New York City Police Department and using vehicles supplied by the NYPD similar in appearance to police cars[3] and using other equipment supplied by the NYPD. Thus, NYPD effectively made SHMIRA for all relevant times and periods its agent in Crown Heights. That members of SHMIRA, to wit, SKOBLO and STERN were for all relevant periods and times auxiliary police officers at the 77th Precinct.

37. That for all relevant times and periods, the NYPD was aware of the feud between SHMIRA and SHOMRIM.

38. That instead of remaining aloof, the NYPD actively and willfully assisted SHMIRA in its feud against SHOMRIM and engaged in a pattern of actions to intimidate SHOMRIM s members and embarrass and humiliate SHOMRIM in the community which included, but was not limited to the following:

>    A. That TROISE delivered threats to members of SHOMRIM that they would be arrested or harassed if they continued their participation in SHOMRIM and oversaw officers who ticketed vehicles belonging to SHOMRIM and members of SHOMRIM where the tickets were without merit and dismissed;
>
>    B. That HAMMOND caused parking tickets to be issued to SHOMRIM s vehicles and vehicles of SHOMRIM s members that were legally parked and

---

[3] - SHMIRA was in fact supplied with a radio patrol car by the NYPD virtually identical in appearance to a NYPD police car.

had SHOMRIM s vehicles illegally towed during a Jewish holiday just as people were leaving the synagogue which greatly impaired SHOMRIM s standing in the community;

C. That WRIGHT threatened members of SHOMRIM with arrest or harassment if they continued their participation in SHOMRIM;

D. That DUFFY used HUEBNER to translate for criminal complainants against members of SHOMRIM even though it was well known that HUEBNER actively supported SHMIRA and opposed SHOMRIM;

E. That MANGAN lied in paperwork regarding particulars concerning LIFSHITZ arrest;

F. That McHUGH ticketed SHOMRIM s vehicles which tickets were defective on their face.

39. That notwithstanding complaints by SHOMRIM and/or its members to supervisory employees of the NYPD, the harassment as aforesaid continued.

40. That upon information and belief, the NYPD failed either to instruct its officers and employees to avoid harassing SHOMRIM and failed to supervise and police its employees to ensure such harassment did not occur.

41. That the direct, obvious and proximate result of the NYPD s activities was the intimidation of SHOMRIM and its members and interference with SHOMRIM and its members right to peaceably assemble and organize and exercise of its right of free speech and their rights, privileges and immunities secured by the United State Constitution.

42. That in fact and truth, the NYPD should not have sponsored and supported a community group involved in ongoing political battles within the community and should not have engaged in tactics to intimidate and silence SHOMRIM.

## SECOND CLAIM FOR RELIEF

43. That in furtherance of its efforts to suppress or displace SHOMRIM, SHMIRA and its legal advisor HUEBNER under color of state law caused and procured the false arrest in or

about January 22, 2008, of members of SHOMRIM, to wit, the plaintiffs CHAIM HERSHKOP, YEHUDA HERSHKOP, BENJAMIN LIFSHITZ, SCHNEUR PINSON and NECHEMIZ SLATTER, all members on the false claim that they had assaulted residents of a dormitory at 749 Eastern Parkway, Brooklyn, New York, (hereafter the Dormitory ) on or about December 29, 2007 (hereafter the Incident ).

44. That though the NYPD was aware HUEBNER was the legal advisor to SHMIRA and that SHMIRA s interests were strongly adverse against SHROMRIM, the NYPD nonetheless used HUEBNER to translate for the complainants when they appeared before the police notwithstanding HUEBNER s interests being at variance with the NYPD.

45. That though the NYPD were supplied by SHMIRA in or about January 2008 with an edited video of the Incident which completely contradicted the complainants claims of being assaulted by SHOMRIM as the video shows the individual plaintiffs and members of SHOMRIM trying to mediate the conflict[4] or acting only in self-defense, the individual plaintiffs were nonetheless arrested and thereafter prosecuted for brutally assaulting some of the residents in the dormitory.

46. That the NYPD was also aware that the complaints made through HUEBNER and SHMIRA were retaliatory and had only followed complaints by LIFSHITZ on December 29, 2007, to the NYPD that he and other members of SHOMRIM had been assaulted when they responded to the aforesaid incident.

47. That thereafter in or about July 7, 2008, an indictment was returned by the Grand Jury sitting in Supreme Court, Kings County, accusing the individual plaintiffs of various

---

[4] - The conflict arose in the dormitory when messianic students (those who believe Rabbi Schneerson is the messiah) attempted to evict a non-messianic student so a messianic student from Israel would have lodging while briefly visiting New York City.

felonies and misdemeanors, to wit, assault in the second and third degree and attempted assault in the second degree; criminal possession of a weapon in the fourth degree; gang assault in the second degree and menacing.

48. That upon information and belief, the decision to so prosecute the individual plaintiffs was based upon implementation of the understanding reached between SHMIRA, the District Attorney and the NYPD to make SHMIRA the single volunteer pedestrian patrol in Crown Heights and in furtherance of the District Attorney and NYPD s object of encourage reporting of crimes from the Crown Heights community and not upon an objective evaluation of the undisputed evidence of the claimed assault and, with the video, the testimony of the complainants was negated and not supported by probable cause or the clear fact that said complaints were clearly retaliatory.

49. That at great expense and inconvenience, the plaintiffs CHAIM HERSHKOP, YEHUDA HERSHKOP, BENJAMIN LIFSHITZ, SCHNEUR PINSON and NECHEMIZ SLATTER were compelled to attend court with counsel and defend themselves until on December 9, 2009, after approximately six weeks of trial, each of the foregoing plaintiffs were fully acquitted of all charges.

50. During the nearly two years the charges were pending, the plaintiffs CHAIM HERSHKOP, YEHUDA HERSHKOP, BENJAMIN LIFSHITZ, SCHNEUR PINSON and NECHEMIZ SLATTER suffered acute anxiety, humiliation, tension and stress.

51. That the defendants acted under color of law.

52. That the defendants intentionally and recklessly deprived the plaintiffs CHAIM HERSHKOP, YEHUDA HERSHKOP, BENJAMIN LIFSHITZ, SCHNEUR PINSON and NECHEMIZ SLATTER of their rights, privileges and immunities secured by the United State

Constitution.

53. That the defendants intentionally and recklessly deprived the plaintiffs CHAIM HERSHKOP, YEHUDA HERSHKOP, BENJAMIN LIFSHITZ, SCHNEUR PINSON and NECHEMIZ SLATTER of their rights, privileges and immunities secured under the laws of the State of New York.

54. The wrongful, unjustifiable and unlawful apprehension, arrest and detention was carried out without warrant and without probable cause.

55. That the CITY has failed to properly train and supervise its police officers to avoid violation of federally protected rights and privileges and the CITY s failure to train and failure to supervise the defendant officers caused the Plaintiff s constitutional injury.

56. That the plaintiffs and particularly LIFSHITZ were treated unequally by the NYPD and the CITY OF NEW YORK compared to treatment meted out to SHMIRA s members and their co-operators.

57. All defendants are liable for said damages and injuries pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §1983, and violated the laws of the State of New York.

### THIRD CLAIM FOR RELIEF

58. The plaintiffs restate each of their allegations as if fully set forth at length herein.

59. That the defendants intentionally, maliciously and willfully deprived the plaintiffs CROWN HEIGHTS SHOMRIM VOLUNTEER SAFETY PATROL, INC., ARON HERSHKOP, CHAIM HERSHKOP, YEHUDA HERSHKOP, BENJAMIN LIFSHITZ, SCHNEUR PINSON and NECHEMIZ SLATTER of their rights, privileges and immunities secured by the United States Constitution by the First Amendment thereto in that the plaintiffs

were deterred from fully exercising their right to freedom of speech and to peaceably assemble and petition the government for redress of their grievances.

60. All defendants are liable for said damages and injuries pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §1983, and violated the laws of the State of New York.

### FOURTH CLAIM FOR RELIEF

61. The plaintiffs restate each of their allegations as if fully set forth at length herein.

62. That the plaintiff ARON HERSHKOP ( ARON ), the President and co-ordinator of SHOMRIM is the owner of certain property in Crown Heights where he lawfully conducts his business.

63. That following the SHMIRA s dispute with SHOMRIM, his properties have been subjected to the present time to multiple frivolous citations by the City of New York s Department of Buildings; Department of Consumer Affairs; Department of Housing; Department of Environmental Protection and the Sanitation Department for violation of rules and regulations of the CITY.

64. That though most of the Citations have been dismissed, it has required ARON to devote a considerable amount of time and resources appearing and defending such complaints.

65. That the complaints have been phoned in by SHUCHAT from Israel based upon information supplied by LEIB SKOBLO ( SKOBLO ), a co-ordinator of SHMIRA, who has conducted surveillance of ARON s properties using a CITY supplied motor vehicle.

66. That such complaints were made by SHMIRA, SHUCHAT and SKOBLO under color of State law solely to harass, intimidate and silence ARON and SHOMRIM in furtherance of SHMIRA s ulterior goal of suppressing SHOMRIM.

67. That upon information and belief, though members of SHMIRA have conducted business in violation of the same CITY's regulations, no citations have issued against said members.

68. That SHMIRA and the defendants SHUCHAT and SKOBLO acted under color of State law with the willful intent to deprive the plaintiffs SHOMRIM and ARON of their freedom of speech and freedom to assemble and associate in violation of due process under the United States Constitution and the laws of the State of New York.

## FIFTH CLAIM FOR RELIEF

69. The plaintiffs restate each of their allegations as if fully set forth at length herein.

70. That in furtherance of the objectives, aims and purposes of SHMIRA, which had been emboldened by its adoption and sponsorship by the CITY OF NEW YORK and the NYPD, SHMIRA had defendant OKONOV engage in a pattern of harassment in or about 2008 by jamming SHOMRIM's radio system and making false police reports that ARON and LIFSHITZ made threats to kill him and his family.

71. That the NYPD investigated said complaints causing ARON and LIFSHITZ acute embarrassment and distress.

72. That while the complaints were closed without criminal action against ARON and LIFSHITZ, NYPD failed to arrest OKONOV for making false complaints and OKONOV, encouraged by the NYPD's inaction, continued as a member of SHMIRA and continued harassing ARON and LIFSHITZ.

73. That OKONOV and SHMIRA acted under color of State law with the willful intent to deprive the plaintiffs SHOMRIM, ARON and LIFSHITZ of their freedom of speech and freedom to assemble and associate in violation of due process under the United States

Constitution and the laws of the State of New York.

### SIXTH CLAIM FOR RELIEF

74  The plaintiffs restate each of their allegations as if fully set forth at length herein.

75.  That SHMIRA, acting under the sponsorship and endorsement of the defendants CITY OF NEW YORK and the NYPD, and under color of law, was for all relevant times and periods allied with the Crown Heights Jewish Community Council, Inc., ( CHJCC ), with each mutually assisting the other in fulfilling attainment of their common objectives and purposes.

76.  That CHJCC was and is subsidized by grants and contracts received from the CITY OF NEW YORK and performs many governmental functions within the Crown Heights community including compensation of rabbis serving in quasi-judicial offices on the Crown Heights Beth Din[5] and their compensation.

77.  That in furtherance of SHMIRA s agenda against SHOMRIM and its members, CHJCC and the Crown Heights Beth Din have issued letters to harass and intimidate SHOMRIM and the Hershkop family.

78.  That at the insistence of the CHJCC the NYPD ticketed and towed vehicles belonging to SHOMRIM though same were all legally parked.

79.  That SHMIRA and CHJCC acting acted under color of State law with the willful intent to deprive the plaintiffs SHOMRIM and the Hershkops of their freedom of speech and freedom to assemble and associate in violation of due process under the United States Constitution and the laws of the State of New York.

### PRAYER FOR RELIEF

---

[5] - The Beth Din in Crown Heights, as elsewhere in orthodox Jewish communities, is a rabbinical court with jurisdiction over ritual, criminal and monetary matters and, while not compulsory, it commands great respect among the Crown Heights community.

WHEREFORE, plaintiffs demand judgment and pray for the following relief, jointly and severally, against the defendants:

(a)  In favor of the plaintiff in the amount of ONE MILLION FIVE HUNDRED THOUSAND ($1,500,000.00) DOLLARS;

(b) Punitive damages in the amount of ONE MILLION FIVE HUNDRED THOUSAND ($1,500,000.00) DOLLARS;

(c) Reasonable attorney s fees and the costs of litigation of this action pursuant to 42 U.S.C. §1983, and

(d) such other and further relief as to this Court seems just and proper.

Dated: New York, New York
       June 8, 2012

      /s/ Tedd Blecher
TEDD BLECHER (TB-7286)
Attorney for Plaintiff
Office and P.O. Address
225 Broadway - Suite 3010
New York, New York  10007
(212) 732-1900

To: B. Kogan PLLC (by ECFP)
    Erica M. Haber, Esq. (by ECF)
    Elie C. Poltorak, Esq. (by ECF)

heramen3 6/8/12