UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------x
CROWN HEIGHTS SHOMRIM VOLUNTEER
SAFETY PATROL, INC., ARON
HERSHKOP, CHAIM HERSHKOP, YEHUDA
HERSHKOP, BENJAMIN LIFSHITZ,
SCHNEUR PINSON and NECHEMIZ
SLATTER,                                    **MEMORANDUM & ORDER**
                                            11-CV-329 (KAM)

                Plaintiffs,

        -against-

THE CITY OF NEW YORK, CROWN
HEIGHTS SHMIRA, INC., LEIB
SKOBLO, PAUL HUEBNER, PETER
SIMONETTI, BOBBY TROISE, JOHN
HAMMAD, LENNY WHITE, BRIAN DUFFY,
WAYNE MANGAN, TIMOTHY KELCH,
SEAMUS McHUGH, YITZCHOK SHUCHAT,
EFRAIM OKONOV, YOSSI STERN, ELI
POLTORAK, JOHN DOES A-M, JANE
DOES 1-5,

                Defendants.
--------------------------------x
**MATSUMOTO, United States District Judge:**

        On January 21, 2011, plaintiffs, Crown Heights Shomrim

Volunteer Safety Patrol, Inc. ("Shomrim") and six of its

members, filed the instant case.  Plaintiffs filed the

operative, Second Amended Complaint pursuant to 42 U.S.C. § 1983

("Section 1983") and state law on June 8, 2012, alleging

violations of plaintiffs' rights pursuant to the First, Fourth

and Fourteenth Amendments of the United States Constitution and

analogous rights protected by New York law.  ("2d Am. Compl.,"

ECF No. 41.)  Defendants Levi (s/h/a Paul) Huebner and Elie

(s/h/a Eli) Poltorak answered the Second Amended Complaint on
June 28, 2012 and asserted counterclaims against plaintiffs for
libel and slander *per se*, intentional infliction of emotional
distress, and violations of 18 U.S.C. § 1030(g) (fraud and
related activity in connection with computers). (ECF No. 44.)
The remaining appearing defendants moved to dismiss. Now before
the court are motions to dismiss pursuant to Federal Rule of
Civil Procedure 12(b)(6) by two sets of defendants: first, by
The City of New York, Peter Simonetti (s/h/a "Peter
Simminetti"), Robert Troise (s/h/a "Bobby Troise"), John Hammond
(s/h/a "John Hammad"), Leonard Wright (s/h/a "Leonard White"),
Brian Duffy, Wayne Mangan, Timothy Kelch, and Seamus McHugh
(collectively, "the City defendants") (City Defs. Mot. to
Dismiss, ECF No. 53); and, second, by Crown Heights Shmira, Inc.
("Shmira") and Leib Skoblo ("the Shmira defendants") (Shmira
Defs. Mot. to Dismiss, ECF No. 64). For the reasons that
follow, the defendants' respective motions are granted, and the
claims against them are dismissed.

## FACTUAL BACKGROUND

### I.   Documents Considered

    The following facts are drawn primarily from
plaintiffs' Second Amended Complaint, as well as certain
documents submitted by the City defendants. "Generally,
consideration of a motion to dismiss under Rule 12(b)(6) is

limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). The court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. New York Cardiothoracic Grp., PPLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation and citation omitted). Nonetheless, the court is "not bound to accept as true legal conclusions couched as factual allegations," *id.* at 475-76, and "[c]onclusory allegations . . . will not suffice to [defeat] a motion to dismiss," *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (alterations in original and internal quotation marks omitted).

Moreover, there is a limited category of documents outside of the complaint that may be taken into account on a motion to dismiss. "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered," as may "a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*.'" *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)) (emphases in the original). In addition, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." *Vasquez v. City of New York*, No. 99-CV-4606,

2000 WL 869492, at *2 n.1 (S.D.N.Y. June 29, 2000) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)).  Matters of public record of which the court may take judicial notice include arrest reports and certificates of disposition, *see Wingate v. Deas*, No. 11-CV-1000, 2012 WL 1134893, at *1 n.1 (E.D.N.Y. Apr. 2, 2012), arraignments, *see Parker v. City of New York*, No. 09-cv-910, 2010 WL 1693007, at *3 n.2 (E.D.N.Y. Apr. 28, 2010), and criminal complaints and indictments, *see Garcia-Garcia v. City of New York*, No. 12-CV-1302, 2013 WL 3832730, at 1 n.1 (S.D.N.Y. July 22, 2013).  In addition, a "court may take judicial notice of a document filed in another court – not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998).

## II.  Relationship Between Shomrim, Shmira, and the City

Plaintiff Shomrim is a New York non-profit corporation, made up of volunteers who act as a safety patrol in Crown Heights, Brooklyn.  (2d Am. Compl. ¶¶ 6, 30.)  The organization was founded in 1968 and incorporated in 1997, and similar groups exist in other Hasidic Jewish neighborhoods in Brooklyn and internationally.  (*Id.* ¶¶ 30-31.)  Shmira, a similar group also operating in Crown Heights, was formed in

4

1999, by two former Shomrim members who had been expelled from Shomrim. (*Id.* ¶ 31.) Plaintiffs indicate in their Complaint that tension exists between the two groups. (*See id.* ¶¶ 32, 42.)

Plaintiffs allege "on information and belief" that, on an unspecified date, defendants Yossi Stern, the Administrative Director of Shmira, and Paul ("Levi") Huebner, legal advisor to Shmira, as well as other Shmira members, met with the "District Attorney of Kings County and/or members of his staff and police officials of NYPD." (*Id.* ¶ 34.) At that meeting, it was decided that Shmira would work with the police to combat crime in the Jewish community in Crown Heights. (*Id.*) In December of 2007, defendant Simonetti, the commanding officer of New York City Police Department ("NYPD") Precinct 71 in Crown Heights, informed Shomrim members that NYPD would recognize only one volunteer citizen patrol in Crown Heights, and Shmira made a similar announcement that it was endorsed by the NYPD. (*Id.* ¶¶ 20-21, 33, 35.) As a result of its affiliation with the NYPD, Shmira members "wore patches simulating the patches worn by members of the [NYPD] and [used] vehicles supplied by the NYPD similar in appearance to police cars and [used] other equipment supplied by the NYPD." (*Id.* ¶ 36.) Shmira patrolled the Crown Heights neighborhood and apprehended those it observed committing crimes. (*Id.*)

### III. The January 22 and 28, 2008 Arrests

In January of 2008, plaintiffs Chaim Hershkop, Yehuda Hershkop, Benjamin Lifshitz, Schneur Pinson, and Nechemiz Slatter were arrested for the alleged December 29, 2007 assault of several residents at a dormitory located at 749 Eastern Parkway in Brooklyn. (*Id.* ¶ 43; *see also* Haber Decl. Exs. G (NYPD SPRINT reports) and H (Omniform System Complaints).)[1]  On that date, the NYPD received 911 calls regarding men being attacked at the dormitory. (Haber Decl. Ex. G, at 7.)  Four victims went to the hospital suffering injuries to the head and body, including facial fractures, bruising, swelling and contusions, and, on December 30, 2007, while still at the hospital and thereafter, lodged complaints with defendant Sergeant Wayne Mangan. (*See* Haber Decl. Exs. I (NYPD Aided Reports), and J (Kings County District Attorney Complaint Room Screening Sheet).)  Defendant NYPD Detective Brian Duffy, of the 77th Precinct Detective Squad, subsequently began investigating the case. (*See* Haber Decl. Ex. K, at NYC34.)

Plaintiffs allege that on January 3, 2008, defendant Huebner contacted the Detective Squad and spoke with Detective Duffy. (*Id.*)  Huebner conveyed to Duffy that he knew the victims of the December 29 incident and that they primarily

---

[1] "Haber Decl." refers to the Declaration of Assistant Corporation Counsel Erica M. Haber, who represents the City defendants. (ECF No. 54.)  Attached to Ms. Haber's declaration are a number of public documents of which the court has taken judicial notice.

spoke Hebrew.  Aware that Huebner was legal advisor to Shmira, which had interests "strongly adverse to Shomrim," the NYPD accepted Huebner's offer to come to the Precinct with one of the victims and act as a translator, "notwithstanding Huebner's interest being at variance with the NYPD." (*Id.*; 2d Am. Compl. ¶¶ 43-44.)

Between January 9 and January 22, 2008, Detective Duffy and other officers interviewed the complaining witnesses with Huebner translating.  During these interviews, the complainants identified plaintiffs as their attackers.  (Haber Decl. Ex. K, at NYC35 (witness's statement that plaintiff Lifshitz "grabbed [the witness], shook him around and attempt[ed] to tear off his clothes); 40 (witness identified photograph of plaintiff Lifshitz); 49 (witness's statement that, after another individual started choking him and pushed him against a wall, "Yehudah ('Yudi') Herschkop punshed [*sic*] him three times in the face and then kicked him in the head" and "Nossi Slater [*sic*] punched him"); 55 (witness' identification of photographs of plaintiffs Slatter and Chaim Hershkop as his assailants); 66 (witness statement that plaintiffs Pinson and Lifshitz attacked him); 72 (witness's identification of plaintiffs Pinson and Lifshitz's photographs); 81 (witness's statement that Yehudah Hershkop, Chaim Hershkop, and Slatter attacked him); 87 (witness photo identification of plaintiffs

Pinson, Chaim Hershkop, and Slatter).  The complainants subsequently signed supporting deposition forms regarding the incident, which also identified the above-named plaintiffs. (*See generally* Haber Decl. Ex. L.)

On an unspecified date in January of 2008, Shmira provided the Police Department with a video of the incident. (2d Am. Compl. ¶ 45.)  Plaintiffs allege that the video was later used at trial.  (*See* Pls. Ltr. dated Sept. 9, 2013, ECF No. 62.)  Detective Duffy testified at trial, however, that he was not aware of the videotape.  (Haber Decl. Ex. Q, at 1708-09.)  In light of the fact that the video is specifically referenced and relied upon in the Complaint, the court has viewed and considered the video.  *See Roth*, 489 F.3d at 509; *see also Garcia v. Does*, --- F.3d ----, 2014 WL 4099270, at *1 (2d Cir. Aug. 21, 2014) (considering video evidence incorporated into the complaint by reference when evaluating defendants' qualified immunity prior to discovery taking place in the case). The video depicts one member of Shomrim, identifiable by his labeled jacket and hat, speaking to a group of men.  It is clear that several members of the crowd do not wish for the Shomrim member to be there, and one man appears to be accusing Shomrim of assaulting people in the past.  Subsequently, as the argument escalates and some pushing occurs, another member of Shomrim can be seen attempting to calm the crowd and then pushing a man in

the crowd defensively. The video goes black at the same time as there is increased shouting, and the video ends.

On January 22, 2008, plaintiffs Chaim Hershkop, Lifshitz, Pinson, and Slatter surrendered themselves at the 77th Precinct and were arrested and charged with Assault in the Third Degree. (*See* Haber Decl. Exs. K, M, N.) They were issued Desk Appearance Tickets. (*Id.* Ex N.) Plaintiff Yehuda Hershkop later surrendered on January 28, 2008 and was arrested. (*Id.* Ex K, at NYC57.)

In March of 2008, the Kings County District Attorney's Office charged plaintiffs (other than Aron Hershkop) with Assault in the Third Degree, Assault in the Second Degree, Menacing in the Third Degree, and the Harassment in the Second Degree. Plaintiffs Lifshitz and Pinson were additionally charged with Menacing in the Second Degree and Criminal Possession of a Weapon in the Fourth Degree. (*Id.* Ex. O.) On approximately July 7, 2008, the Grand Jury indicted plaintiffs. (*Id.* Ex. P (Grand Jury indictment).) Following a jury trial, plaintiffs were acquitted of the charges against them on December 9, 2009. (2d Am. Compl. ¶ 49.)

**IV. Other Alleged Harassment of Shomrim by the NYPD and City**

Plaintiffs allege, without providing specific dates, locations, or supporting facts, that NYPD officers engaged in a number of actions calculated to "intimidate" and "humiliate"

Shomrim because of the Police Department's favoritism of Shmira. (2d Am. Compl. ¶ 38.) These actions include the following. Plaintiffs allege that defendant Robert Troise, an NYPD sergeant in the 71st Precinct, threatened Shomrim members with future arrests or harassment if plaintiffs continued to associate with Shomrim and that Troise supervised other officers who issued meritless parking tickets. (*Id.* ¶¶ 22, 38A.) Plaintiffs similarly allege that they were threatened with arrest and further harassment by defendant NYPD Officer Leonard Wright. (*Id.* ¶¶ 24, 38C.)

Plaintiffs further allege that 71st Precinct Officers John Hammond and Seamus McHugh engaged in the improper ticketing of Shomrim and Shomrim members' vehicles. (*Id.* ¶¶ 23-24, 38B, 38F.) Specifically, plaintiffs allege that Officer Hammond ticketed and caused to be towed Shomrim vehicles that were legally parked during a Jewish holiday. (*Id.* ¶ 38B.) According to the Complaint, the towing of the vehicles was scheduled to coincide with the time that community members were leaving synagogue, "which greatly impaired [Shomrim's] standing in the community." (*Id.; see also id.* ¶ 78 (alleging that the NYPD issued tickets and towed vehicles at the direction of Shmira and the Crown Heights Jewish Community Council, Inc. ("CHJCC"),

which is not a named defendant in this matter).)[2]

## V.    Other Alleged Harassment of Shomrim by Shmira Members

Plaintiff alleges that Shmira members harassed plaintiff Aron Hershkop, President of Shomrim, by making unfounded complaints to the City regarding certain real property owned by Mr. Hershkop. (*Id.* ¶¶ 62-63.) Defendant Leib Skoblo, a member of Shmira, allegedly initiated the complaints by providing information to defendant Yitzchok Shuchat, who is also a Shmira member. (*Id.* ¶¶ 14, 16, 65.) Skoblo also surveilled Aron Hershkop's property in a vehicle provided to him by the City. (*Id.* ¶ 65.) Shuchat in turn informed City agencies, which issued unspecified citations on unspecified dates to Mr. Hershkop. Most of these citations have now been dismissed. (*Id.* ¶¶ 63-64.)

Plaintiff also makes a set of allegations regarding non-moving defendant Efraim Okonov, a member of Shmira. (*See id.* ¶¶ 19, 70.) According to the Complaint, in 2008, Okonov, acting on Shmira's instructions, began to harass Shomrim members by "jamming Shomrim's radio system and making false police reports that [plaintiffs] Aron [Hershkop] and [Benjamin] Lifshitz made threats to kill [Okonov] and [Okonov's] family."

---

[2] In addition to this allegation, plaintiffs also allege that CHJCC and fellow non-defendant Crown Heights Beth Din sent harassing letters to the Hershkop plaintiffs. Because CHJCC and Crown Heights Beth Din are not named defendants in this action and there is minimal information about these entities in the operative complaint, the letter-writing allegation is immaterial, fails to state a claim, and will not be addressed further.

(*Id.* ¶ 70.)  The NYPD allegedly investigated Okonov's complaints but closed them without criminal action.  (*Id.* ¶¶ 71-72.)

## DISCUSSION

### I.  Motion to Dismiss Standard

Both the City defendants and Shmira defendants seek to dismiss the claims asserted against them pursuant to Federal Rule of Civil Procedure 12(b)(6).  Under Rule 12(b)(6), a pleading may be dismissed for "failure to state a claim upon which relief can be granted."  In considering a motion to dismiss, the court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party."  *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007).  Nonetheless, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In order to be plausible, the alleged factual content must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).  "While a complaint need not contain 'detailed factual allegations,' it requires 'more than an unadorned, the defendant-unlawfully-harmed-me accusation.'"  *Id.* (quoting

12

*Iqbal*, 556 U.S. at 678); *accord DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

## II.  City Defendants' Motion to Dismiss

The City defendants move to dismiss all claims brought against them, which include the following causes of action, brought pursuant to 42 U.S.C. § 1983: 1) that the individual defendants violated plaintiffs' First Amendment rights by issuing unwarranted tickets, illegally towing Shomrim vehicles, and threatening Shomrim members with arrest if they continued associating with Shomrim (First Claim for Relief); 2) that plaintiffs Chaim and Yehuda Hershkop, Lifshitz, Pinson and Slatter were falsely arrested and maliciously prosecuted (Second Claim for Relief); 3) that the City defendants treated plaintiffs unequally, as compared to Shmira members (First, Second, and Fourth Claims for Relief); and 4) that the City is liable for the aforementioned, allegedly unconstitutional actions.[3]  The court will consider the viability of each of these

---

[3] Plaintiffs also bring a Third Claim for Relief against all defendants.  This Claim for Relief states that, based on the allegations in the remainder of the Complaint, defendants "intentionally, maliciously, and willfully deprived the plaintiffs" of their rights under the First Amendment and that "[a]ll defendants are liable for said damages and injuries pursuant to the Fourth and Fourteenth Amendments," 42 U.S.C. § 1983, and the laws of New York.  The factual bases for the conclusory legal allegations in this claim are wholly unclear, and, accordingly, the court must dismiss it.  *See Brandon v. City of New York*, 705 F. Supp. 2d 261, 268-69 (S.D.N.Y. 2010) ("[G]eneral allegations [in the Complaint], without supporting facts other than a clause incorporating an entire complaint by reference, are insufficient to withstand even a motion to dismiss because they do not give fair notice of what the claim is and the grounds upon which it rests." (internal quotation marks and citations omitted)).

claims in turn.

### a. Plaintiffs' First Amendment Claims Related to Individual City Defendants' Alleged Harassment

### i. Legal Standard

In their "First Claim for Relief," plaintiffs allege that the individual City defendants engaged in a number of harassing actions in order to discourage plaintiffs' membership in Shomrim, thereby violating of plaintiffs' right to assemble and to free speech. (2d Am. Compl. ¶¶ 38, 41.) To adequately plead a First Amendment retaliation claim under Section 1983, "a plaintiff must allege that: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated by or substantially caused by plaintiff's exercise of that right; and (3) the defendant's actions effectively chilled the plaintiff's exercise of his rights."[4] *Whitfield v. Imperatrice*, 477 Fed. App'x 806, 808-09 (2d Cir. 2012) (citing *Cornell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998) (summary order)).

Plaintiffs identify two separate rights protected by the First Amendment that they allege were violated: their freedom of speech and freedom of association. "[A]s a general

_____

[4] Certain courts in the Second Circuit have held at the summary judgment stage that a plaintiff "need not show a chilling effect" to prevail on a First Amendment retaliatory prosecution claim if he can "demonstrate that the prosecution was not supported by probable cause." *Bradley v. City of New York*, No. 04-CV-8411, 2007 WL 232945, at *8 (S.D.N.Y. Jan. 25, 2007) (citing *Yuan v. Rivera*, 48 F. Supp. 2d 335, 351 n.6 (S.D.N.Y. 1999)). To the extent that plaintiffs allege that the prosecution subsequent to their January 2008 arrests was retaliatory, a sufficient allegation of the prosecution's chilling effect is still be required because, as will be discussed below, the court finds that the prosecution was supported by probable cause.

14

matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Alvarez*, 132 S.Ct. 2537, 2543 (2012) (quoting *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002)).  Such expression includes conduct that, "at the very least, [is intended] to convey a 'particularized message' along with . . . a great likelihood that the message will be understood by those viewing it." *Jones v. Schneiderman*, 974 F. Supp. 2d 322, 333 (S.D.N.Y. 2013) (quoting *Zalewska v. Cnty. of Sullivan*, 316 F.3d 314, 319 (2d Cir. 2003)).  "The right to free association is 'a right closely allied to freedom of speech.'" *State Emp. Bargaining Agent Coalition v. Rowland*, 718 F.3d 126, 132 (2d Cir. 2013) (quoting *Shelton v. Tucker*, 364 U.S. 479, 485-86 (1960)).  The Supreme Court has held that "implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984).

### ii. Application

As a preliminary matter, the court notes that there are several individual City defendants against whom plaintiffs do not in fact make any accusations of unconstitutional conduct.

*See Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) ("It is
well settled in this Circuit that personal involvement of
defendants in alleged constitutional deprivations in a
prerequisite to an award of damages under § 1983." (internal
citation omitted)).  First, no allegations at all are made
against NYPD Officer Timothy Kelch in the Second Amended
Complaint and plaintiffs concede that Officer Kelch is not
properly named in this complaint and may be dismissed.  (*See*
Pls. Opp. 26 n.18, ECF No. 61.)  Accordingly, Officer Kelch is
dismissed from this case.  Second, the sole allegation regarding
Inspector Simonetti is that he announced the NYPD's policy of
endorsing one volunteer citizen patrol in Crown Heights.  (2d
Am. Compl. ¶ 33.)  Even assuming that this policy was
unconstitutional, there is no allegation that Simonetti
conceived the policy, only that he communicated it.  Because
there are no allegations in the Complaint that Simonetti
violated plaintiffs' constitutional rights, all claims against
him are dismissed.

    As to the other individual defendants, plaintiffs'
allegations do not state a claim for a First Amendment
violation.  Regarding plaintiffs' freedom of speech claims, it
is wholly unclear what, if any, speech they allege was impaired
by the City defendants' actions.  Moreover, the Second Amended
Complaint is devoid of any allegation that plaintiffs' speech or

associational rights were chilled, or that Shomrim members have been at all deterred from their activities. For this reason, plaintiffs' First Amendment Claims must be dismissed. *See Old St. George's LLC v. Bianco*, 389 Fed. App'x 33, 35 (2d Cir. 2010) (dismissing a complaint that alleged no actual chill to plaintiff's speech); *Ford v. Reynolds*, 167 Fed. App'x 248, 250 (2d Cir. 2006) (noting that the "allegation of a chill is indispensable for private plaintiffs" and dismissing plaintiffs' claims for failing to make such an allegation); *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 369-70 (E.D.N.Y. 2010) (dismissing plaintiff's First Amendment claims because he failed to make "any factual allegations setting forth specific instances in which [he] desired to exercise [his] First Amendment rights but was chilled by Defendants' alleged conduct" (internal citation and quotation marks omitted)); *Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 249 (E.D.N.Y. 2010) (same).[5] Accordingly, the court dismisses plaintiffs'

---

[5] The plaintiffs make one allegation that could arguably be construed as a claim that Shomrim's First Amendment rights were constrained: that Shomrim's "standing in the community" was "greatly impaired" causing Shomrim (but not its members) to suffer embarrassment and humiliation when Shomrim vehicles (but not its members' vehicles) were towed in front of congregants leaving a synagogue. (2d Am. Compl. ¶ 38B.) Although the Second Circuit has held that "other forms of tangible harm will satisfy the injury requirement [of First Amendment claims]," "[h]urt feelings or a bruised ego are not by themselves the stuff of constitutional tort." *Zherka v. Amicone*, 634 F.3d 642, 645-46 (2d Cir. 2011) (holding that an allegation of defamation *per se* under New York law did not meet the injury requirement for plaintiff's constitutional claim). Instead, plaintiffs must allege a concrete harm, such as the denial of building permits in retaliation for speech critical of the local government. *See, e.g.*, *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 161 (2d Cir. 2013) (collecting cases). Plaintiffs' conclusory assertion that the

First Amendment claims against the City defendants in their entirety.

Even had plaintiffs adequately alleged that their speech or association with Shomrim and each other was chilled by the City defendants' actions, the court would nonetheless find that plaintiffs have failed to provide sufficiently specific allegations in the operative complaint to allow their constitutional claims to proceed against the individual defendants. For example, the Second Amended Complaint alleges generally that defendant-police officers threatened Shomrim members and inappropriately issued them tickets or towed Shomrim's vehicles. These allegations are barren of facts about the content of these threats, to whom they were made, why the towing and ticketing were illegal or defective, and the time period during which these actions occurred. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (noting that Federal Rule of Civil Procedure 8 "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" (quoting *Twombly*, 550 U.S. at 555)); *Atkins-Payne v. Alterman*, No. 14-CV-4066, 2014 WL 4388597, at *3 (E.D.N.Y. Sept.

---

towing of Shomrim vehicles harmed its reputation is not a tangible harm sufficient to satisfy the injury requirement articulated by the Second Circuit and does not counsel against dismissal in this case. *See Zherka*, 634 F.3d at 645 ("[A]s a general matter, First Amendment retaliation plaintiffs must typically allege 'actual chilling.'").

5, 2014) (finding a complaint deficient where plaintiff failed "to provide facts connection each of [the] defendants to a violation of plaintiff['s] federal rights."). Moreover, plaintiffs allege no facts to support their First Amendment claim against the City. Therefore, plaintiffs' First Amendment claims against the City and the individual City defendants are dismissed.

### b. Plaintiffs' Fourth and Fourteenth Amendment Claims Related to Their Arrest and Prosecution

Plaintiffs allege false arrest and malicious prosecution of the individual plaintiffs, with the exception of Aron Hershkop, who was not involved, in violation of their rights under the Fourth and Fourteenth Amendments. The court will first address the false arrest claim and then turn to the malicious prosecution claim.

#### i. False Arrest

##### 1. Legal Standard

A plaintiff alleging false arrest "must show . . . that the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Jenkins v. City of New York,* 478 F.3d 76, 84 (2d Cir. 2007) (internal quotation and citation omitted).

Probable cause to arrest exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." *Weyant,* 101 F.3d at 852 (collecting cases).  In undertaking this analysis, the court looks to "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them [at the time of the arrest], without regard to their underlying intent or motivation." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (quoting *Graham*, 490 U.S. at 397).  A victim's statement is sufficient to establish probable cause "unless circumstances raise doubt as to the person's veracity." *Carthew v. Cnty. of Suffolk*, 709 F. Supp. 2d 188, 197 (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 69-70 (2d Cir. 2001)); *see also Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (analyzing probable cause in the context of an officer's qualified immunity defense and noting that "it is well-established that a law enforcement official has probable cause to arrest if he received his information from . . . the putative victim or eyewitness.").

## 2. Application

In their Second Claim for Relief, plaintiffs allege that, on January 22, 2008, the City defendants falsely arrested

plaintiffs Chaim and Yehuda Herkskop, Lifshitz, Pinson, and Slatter.  Specifically, plaintiffs allege that, at the time of their arrest, the NYPD was aware that the complaints "through Huebner and Shmira" against plaintiffs were baseless and were retaliatory and "followed complaints by Lifshitz on December 29, 2007, to the NYPD that he and other members of Shomrim had been assaulted when they responded" to the incident at the dormitory. (2d Am. Compl. ¶ 46.)  The court finds, however, that there was probable cause supporting plaintiffs' arrests and that, accordingly, plaintiffs' false arrest claims against the City defendants fail.

The arrests were made after several complaining witnesses made statements to Detective Duffy and identified plaintiffs' photographs.  The complainants' subsequent signed statements also implicated plaintiffs and discussed the significant injuries for which complainants were treated at Kings County Hospital, where they had also been interviewed and observed by Sergeant Mangan.  Absent any allegations of facts that would undermine the veracity of the victims' statements, the multiple statements by the complaining victims were sufficient as a matter of law to establish probable cause for plaintiffs' arrests.  *See, e.g.*, *Martinez*, 202 F.3d at 634. Although plaintiffs object to the use of defendant Huebner as a translator during the process of gathering these statements,

there is no allegation in the Complaint that Huebner inaccurately translated or otherwise altered the complaining witnesses' statements.

Plaintiffs also assert in their briefing that the NYPD should have known that the complainants' accounts of the December 2007 incident were untrustworthy because the video of the incident contradicted those statements. (Pls. Opp. 22.) Even had Detective Duffy received and viewed the video of the incident prior to the arrests, a fact which the operative complaint does not specifically allege, the court does not view the video to contradict the victims' statements in the record. The visual portion of the video cuts off at the end and shouts can be heard. It is not clear if the video captured the entire incident at the dormitory on December 29, 2007. The video, therefore, does not speak to whether or not the assaults occurred and the roles of the individual plaintiffs (indeed, it is unclear who is depicted in the video). Consequently, the video does not undermine probable cause based on the complaining witnesses' statements. Moreover, as the City defendants correctly note, an arresting officer is not, by law, required "to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Martinez*, 202 F.3d at 635; *see also Koester v. Lanfranchi*, 288 Fed. App'x 764, 766 (2d Cir. 2008) ("an officer is not required to eliminate every possible

line of impeachment that might apply to a victim complainant").
Accordingly, plaintiffs' false arrest claims are dismissed.

### ii. Malicious Prosecution

#### 1. Legal Standard

To succeed on a section 1983 claim of malicious prosecution, the plaintiff "must show some post-arraignment deprivation of liberty that rises to the level of a constitutional violation." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995). This showing requires four elements: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions. *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003); *accord Conway v. Vill. of Mt. Kisco*, 750 F.3d 205, 214 (2d Cir. 1984).

A police officer-defendant may be held liable for malicious prosecution where he or she "brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits, or swore to and signed a felony complaint." *Cunninham v. City of New York*, No. 04-CV-10232, 2007 WL 2743580, at *5 (S.D.N.Y. Sept. 18, 2007) (quoting *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005)) (internal citations omitted). "[A] plaintiff

usually cannot show arresting officers initiated a criminal proceeding against him solely based on an arrest," unless false information provided by the officer "influences a decision whether to prosecute." *Levy v. City of New York*, 935 F. Supp. 2d 575, 588-89 (E.D.N.Y. 2013) (internal quotation marks and citation omitted).

As in claims of false arrest, probable cause is a complete defense to malicious prosecution claims. *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2003) (citing *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'" *Johnson v. Constantellis*, 221 Fed. App'x 48, 50 (2d Cir. 2007) (quoting *Kinzer*, 316 F.3d at 144). Moreover, an indictment by a grand jury "creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino*, 331 F.3d at 72 (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983)) (emphasis in original).

### 2. Application

Plaintiffs' malicious prosecution claims fail both because the named defendants did not initiate the prosecution and because there was probable cause for the prosecution.

First, plaintiffs do not allege facts establishing that any of the individual defendants in this case initiated the prosecution. To the contrary, Assistant District Attorney Meredith McClosky of the Kings County District Attorney's Office swore out the criminal complaints made against each of the prosecuted plaintiffs, initiating the prosecution. (*See* Haber Decl. Ex. O.) The complaint does not identify any false information provided by Sergeant Mangan or Detective Duffy that motivated the prosecution. Although the complaint alleges in a conclusory fashion that Sergeant Mangan "lied in paperwork regarding particulars concerning the Lifshitz arrest" (2d Am. Compl. ¶ 38E), it does not articulate what Mangan lied about, and the public records related to this case establish that the statements about plaintiffs' culpability came from the complaining witnesses, not the officers.

Moreover, there was probable cause to prosecute plaintiffs based on the probable cause for the arrest, the lack of any intervening fact that undermined probable cause to arrest, and the Grand Jury indictment. There is no allegation in the complaint that the probable cause established by the arrest and the Grand Jury indictment was disturbed by an intervening fact or fraud or perjury. To the contrary, plaintiffs state in their papers that they do not allege any perjury before the Grand Jury or at trial, "but for the decision

by the City to arrest the plaintiffs and refer the matter for prosecution." (Pls. Opp. 16.) For the foregoing reasons, and for the reasons stated in the court's analysis of plaintiffs' false arrest claims, plaintiffs' malicious prosecution claims are dismissed.

### c. Plaintiffs' Equal Protection Claim

#### i. Legal Standard

Plaintiffs allege in a general fashion that the City defendants treated plaintiffs unequally, as compared to Shmira members. (2d Am. Compl. ¶¶ 42 ("the NYPD should not have sponsored and supported a community group involved in ongoing political battles within the community"); 56 ("plaintiffs and particularly Lifshitz were treated unequally by the NYPD and the City of New York compared to treatment meted out to Shmira[']s members and their co-operators" [in connection with the January 2008 arrests]); 67 ("though members of Shmira have conducted business in violation of the same City regulations [for which Aron Hershkop received citations], no citations have issued against [Shmira] members"). It is unclear what legal theory plaintiffs intend to invoke by making these allegations; however, the Court will interpret the allegation, as do the City defendants, as an Equal Protection Claim regarding selective enforcement of city and state laws pursuant to the Fourteenth Amendment.

"To state a claim for selective enforcement, the plaintiff must establish '(1) that [he] was treated differently from others similarly situated, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Fierro v. New York City Dep't of Educ.*, 994 F. Supp. 2d 581, 592 (S.D.N.Y. 2014) (quoting *Gentile v. Nulty*, 769 F. Supp. 2d 573, 578 (S.D.N.Y. 2011)); *accord Kamholtz v. Yates Cnty.*, 350 Fed. App'x 589, 591 (2d Cir. 2009) (citing *LaTrieste Rest. & Carbaret, Inc. v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)). Two groups are similarly situated when "a prudent person, looking objectively at the two instances of conduct, would think them roughly equivalent and the protagonists in more or less the same situation." *Tasadfoy v. Ruggiero*, 365 F. Supp. 2d 542, 552 (S.D.N.Y. 2005); *see also Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) ("To be 'similarly situated,' the individuals with whom [plaintiff] attempts to compare herself must be similarly situated in all material respects." (internal citation omitted)).

## ii. Application

Plaintiffs have not made sufficient factual allegations to sustain their claim that certain laws were

selectively enforced by the City defendants against Shomrim
members as opposed to Shmira members.  Specifically, plaintiffs
do not allege that members of Shmira were similarly situated to
plaintiffs when the City defendants' alleged discrimination
occurred.  For example, in their allegations regarding the
issuance of parking tickets to plaintiffs and the towing of
Shomrim vehicles, plaintiffs never allege that the Shmira
defendants also violated parking laws but were not ticketed or
towed.  (*See, e.g.*, 2d Am. Compl. ¶ 38.)  Similarly, in alleging
that the City and NYPD treated plaintiffs unequally when
arresting them for the alleged December 2007 assaults,
plaintiffs do not allege, even in a conclusory manner, that
there was probable cause for the arrest of Shmira members that
the NYPD declined to arrest.  (*See id.* ¶ 56.)  Finally, with
regard to the building citations plaintiff Aron Hershkop
received, plaintiffs do not allege that Shmira members' similar
violations were known to the City defendants and ignored.  (*Id.*
¶ 67.)

        Furthermore, the NYPD's decision to work with Shmira
instead of Shomrim does not provide the basis for an Equal
Protection claim.  Plaintiff does not allege any impermissible
reason, such as race, religion, or a desire to punish Shomrim
members for exercising their constitutional rights, that the
City defendants would train and provide resources to Shmira.

Accordingly, the court must dismiss plaintiffs' Equal Protection claims against the City defendants. *See Kamholtz*, 350 Fed. App'x at 591 (dismissing a selective enforcement claim where plaintiff failed to compare his treatment to others similarly situated); *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005) (holding that a showing of disparate treatment alone is insufficient to state a selective enforcement claim).

### d. Municipal Liability

Plaintiffs seek to hold the City responsible for the above described constitutional claims. "Following [*Monell v. Department of Social Services*, 436 U.S. 658 (1978)] and its progeny, a municipality cannot be held liable under § 1983 under a theory of *respondeat superior*. Rather, there must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Abreu v. City of New York*, 657 F. Supp. 2d 357, 360 (E.D.N.Y. 2009) (quoting *City of Canton v. Harris*, 489, U.S. 378, 385 (1989)) (additional internal citations omitted). Because the court has found that plaintiffs have not adequately alleged any constitutional violations, plaintiffs' municipal liability claims also fail, and plaintiffs' claims against the City of New York are dismissed.[6] *See, e.g., Vassallo v. Lando*, 591 F. Supp. 2d 172,

---

[6] Plaintiffs' related allegation that the City failed to train and supervise its employees (2d Am. Compl. ¶¶ 40, 55) must be dismissed for the same reasons.

202 (E.D.N.Y. 2008) (holding that, where the individual City employees had not committed any constitutional violations, the claim against the City pursuant to *Monell* must also fail). Accordingly, all claims against the City defendants are dismissed.

### III. The Shmira Defendants' Motion to Dismiss

Shmira and Skoblo ("the Shmira defendants") also move to dismiss the claims against them in the Second Amended Complaint. As the court reads the operative complaint, there are two causes of action brought against the Shmira defendants, both pursuant to 42 U.S.C. § 1983: 1) that the Shmira defendants, in concert with defendant Shuchat, violated plaintiffs' freedoms of speech and association and their due process rights by making complaints to the City about Aron Hershkop's property (Fourth Claim for Relief); and 2) that the Shmira defendants violated plaintiffs' freedoms of speech and assembly and their due process rights by making false police reports regarding plaintiffs Aron Hershkop and Lifshitz and by interfering with Shomrim's radio system (Fifth Claim for Relief).[7]  Plaintiffs allege that, at all times relevant to these causes of action, the Shmira defendants acted under color of

---

[7] As previously noted, plaintiffs also make a sixth claim for relief, which makes allegations against a non-party, the CHJCC.  In light of the fact that this Claim for Relief makes no substantive allegations against a person or entity sued in this case and for the same reasons, discussed below, that the court dismisses the other claims against the Shmira defendants, the Claim is dismissed.

law.  (*See* 2d Am. Compl. ¶¶ 66, 68, 73.)

**a. Legal Standard**

The first inquiry in determining whether plaintiffs
have adequately pled their constitutional claims against the
Shmira defendants is whether, in fact, the defendants were
acting under color of law.  *See Sybalski v. Indep. Grp. Home
Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per
curiam) (citing *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308,
312 (2d Cir. 2003)) ("[a] plaintiff pressing a claim of
violation of his constitutional rights under § 1983 is . . .
required to show state action.")  Private conduct, no matter how
wrongful, is generally beyond the reach of Section 1983.  *See,
e.g.*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 838-43 (1982)
(affirming dismissal of § 1983 claim because defendants were not
state actors); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57
(1978) (stating § 1983 reaches only deprivations of rights by
persons acting under color of law).

Non-state actors may only be held liable under Section
1983 "if there is a sufficiently 'close nexus between the State
and the challenged action' that seemingly private behavior 'may
be fairly treated as that of the State itself.'"[8]  *Sykes v. Bank*

---

[8] The Supreme Court has set forth three scenarios in which a private entity
may be considered a state actor: (1) [when] the entity acts pursuant to the
'coercive power' of the state or is 'controlled' by the state ('the
compulsion test'); (2) when the state provides 'significant encouragement' to
the entity, the entity is a 'willful participant in joint activity with the

*of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).  A "merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity," *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

It is also inadequate for a plaintiff to plead that the state and private actor were involved in joint activity generally; "rather, the plaintiff must allege that the state was involved 'with the *activity that caused the injury*' giving rise to the action." *Sybalski*, 546 F.3d at 257-58 (quoting *Schlein v. Milford Hosp., Inc.*, 561 F.2d 427, 428 (2d Cir. 1997)) (emphases in original); *see also Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) ("In analyzing whether a private entity acts under color of state law for purposes of § 1983, we begin by identifying the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity" (internal quotation marks and citation omitted)).  Moreover, even if a private entity is considered to be functionally a state actor, the wrongdoing complained of must take place within the scope of the actor's duties.  *Cf. Isaac v. City of New York*, No. 10-CV-4177, 2012 WL 314870, at *2

_____

[s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Sybalski*, 546 F.3d at 257 (quoting *Brentwood Acad.*, 531 U.S. at 296).

(E.D.N.Y. Feb. 1, 2012) (noting that acts "of officers in the ambit of their personal pursuits are plainly excluded from acts considered under color of law" and dismissing the Section 1983 claims where the Corrections Officer-defendant engaged in a fight for personal reasons with the plaintiff).

### b. Application

The court need not decide whether Shmira functioned as a state actor for the purposes of Section 1983 liability; plaintiffs have not adequately pled state involvement in the specific injuries alleged in their Fourth and Fifth Claims for Relief. Specifically, plaintiffs allege that Shuchat, using information from Skoblo, complained about Aron Hershkop's property to City authorities. (2d Am. Compl. ¶ 65.) There is no allegation that the City participated in making these complaints or that Shuchat and Skoblo acted as part of their policing activities for Shmira. Although the plaintiffs allege that Skoblo surveilled the Hershkop property with a vehicle provided by the City, this allegation is not sufficient to convert that private surveillance into state action. *See, e.g.*, *Gonzalez v. City of New York*, 135 F. Supp. 2d 385, 394 (E.D.N.Y. 2001) (citing *Tavoloni v. Mt. Sinai Med. Ctr.*, 984 F. Supp. 196, 200-04 (S.D.N.Y. 1997)) ("[S]tate funding and regulation of a private entity alone is insufficient to transform the actions of that entity into state action without showing that the state

exercised its power to bring about the specific allegedly unconstitutional actions."); *accord Engelhardt v. Beth Israel Med. Ctr.*, No. 00-CV-2239, 2000 WL 1871736, at *3 (S.D.N.Y. Dec. 20, 2000).

Plaintiffs' allegations that non-moving defendant Okonov, encouraged by Shmira, made false accusations against Aron Hershkop and Lifshitz also does not implicate the City or Shmira's status as a City-approved community watch group in any way. To the contrary, it appears from the Complaint that the NYPD investigated these accusations independently and closed the complaints. (*See* 2d Am. Compl. ¶ 72.) Accordingly, the plaintiffs' Fourth and Fifth claims are dismissed.

## CONCLUSION

For the foregoing reasons, plaintiffs' claims against the City defendants, Shmira, and Skoblo are dismissed in their entirety.[9] Because the court finds that it would be futile for

---

[9] Although plaintiffs mention in a cursory fashion that the City and Shmira defendants violated state law in addition to certain provisions of the United States Constitution, they fail to specify what state laws they are invoking. In addition, plaintiffs do not press these state law claims in opposition to defendants' motions to dismiss, and the court therefore considers any state law claim plaintiffs sought to make abandoned and the state law claims are therefore dismissed. *See Martinez v. City of New York*, No. 11-CV-7461, 2012 WL 6062551, at *1 (S.D.N.Y. Dec. 6, 2012) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.")

Furthermore, as the City defendants note, in order to bring state law tort claims against a municipality or its employees, a plaintiff must file a notice of claim within ninety days of the claim's accrual. *See, e.g., Eberle v. Town of Southampton*, 985 F. Supp. 2d 344, 347-48 (E.D.N.Y. 2013) (citing N.Y. Gen. Mun. Law § 50-e and collecting cases). New York law mandates that a plaintiff plead that he has filed the notice of claim in his complaint. N.Y. Gen. Mun. Law § 50-i. There is no such allegation in plaintiffs'

plaintiffs to amend their Complaint with regard to these defendants, particularly in light of the fact that the Complaint has been amended twice previously, all of the claims are dismissed with prejudice. The Clerk of Court is accordingly respectfully requested to terminate defendants the City of New York, Crown Heights Shimra, Inc., Skoblo, Simonetti (s/h/a Simminetti), Troise, Hammond (s/h/a Hammad), Wright (s/h/a White), Duffy, Mangan, Kelch, and McHugh from this case.

Accordingly, there are five non-moving defendants remaining in this case: Huebner, Poltorak, Shuchat, Okonov, and Stern. It appears from the docket sheet that defendant Okonov was never served with the first or second amended complaints and that Shuchat and Stern were never served with any version of the complaint. Pursuant to Federal Rule of Civil Procedure 4(m), plaintiff must show cause no later than October 9, 2014 as to why these defendants should not be dismissed. Also by October 9, 2014, plaintiffs must confer with defendants Huebner and Poltorak and provide the court with a joint status letter

---

complaint or any other indication that they have filed a notice of claim, and, the court would therefore dismiss any state tort claims brought against the City defendants. *See Am. Tel. & Tel. Co. v. New York City Dep't of Human Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990) ("Notice of claim requirements are construed strictly by New York state court, and failure to abide by their terms mandates dismissal of the action."). Additionally, any state law claims regarding plaintiffs' arrests would be time-barred, as may other claims for which plaintiffs have not provided a date of accrual. *See* N.Y. CPLR § 215(3) (actions to recover damages for state law torts must be commenced within one year) and N.Y. Gen. Mun. Law § 50-i (tort claims against municipal entities and their employees must be commenced within one year and ninety days).

regarding how they intend to proceed with the case. Finally, plaintiffs' counsel shall serve a copy of this order on defendants Shuchat, Okonov, and Stern and file proof of service with the court forthwith.


**SO ORDERED.**


**Dated:**    September 25, 2014
              Brooklyn, New York

                                    _____/s_____
                                    **KIYO A. MATSUMOTO**
                                    United States District Judge